**COMMONWEALTH of Pennsylvania,**
**Appellee,**

**v.**

**Sean KEYS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 7, 2002.

Filed Jan. 7, 2003.

Karl Baker, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HUDOCK, BOWES, and CAVANAUGH, JJ.

CAVANAUGH, J.

¶ 1 Appellant Sean Keys ("Keys"), appeals from the order entered on September 12, 2001, denying his writ of *certiorari* by the Philadelphia Common Pleas Court after he was convicted of making terroristic threats. *See* 18 Pa.C.S.A. § 2706. We reverse.

¶ 2 On July 12, 2000, Keys, while at home, reportedly held a three-foot long sword to his wife's neck, threatening to cut her throat. Keys then was said to have dragged his wife by her hair and prevented her from leaving the home. Keys' wife, allegedly held overnight against her will, escaped the next day, ran at least eight to ten blocks and contacted the police.

¶ 3 Officer Marcus Dingle arrived and observed that Keys' wife was visibly upset and angry. In response to the officer's query, she recounted the incident. The officer noted that her voice and behavior were distraught and erratic. The officer subsequently arrested Keys and recovered the sword from Keys' bedroom.

¶ 4 A municipal court bench trial took place on May 11, 2001. The wife did not testify at trial and the record does not reflect the reason for her absence. The officer recounted the wife's statements and described the retrieved sword.

¶ 5 Keys' trial counsel objected to the officer's testimony as to what she said, arguing that it was inadmissible hearsay. The trial court overruled the objection, determining that the wife's statements were admissible as an excited utterance. The trial court found Keys guilty of making terroristic threats and sentenced him to eighteen months of reporting probation. It is undisputed that the hearsay statements were the sole evidence offered against Keys.

¶ 6 On June 11, 2001, Keys filed a petition for a writ of *certiorari,* challenging his conviction on the basis that the trial court erred in admitting the wife's hearsay statements. *See* Pa.R.CRIM.P. 1006(1)(a). The court denied Keys' petition on September 12, 2001. On September 20, 2001, Keys filed a notice of appeal with this court.

¶ 7 Keys presents the following issues for our consideration:

[I.] Did not the lower court err in denying Mr. Keys' Writ of *Certiorari* challenging his conviction in the Municipal Court as the evidence offered was insufficient to establish guilt beyond a reasonable doubt, and, even if sufficient, the only evidence offered against Mr. Keys at his Municipal Court trial was inadmissible hearsay.

[II.] More specifically, was not the sole testimony offered at trial, a police officer's claim that defendant's wife had told him that her husband had assaulted her, in the absence of testimony from the

wife herself or any evidence establishing that an assault had taken place, both inadmissible and, even if admissible, insufficient to establish guilt beyond a reasonable doubt?

¶ 8 It is well-settled that "[a] trial court's rulings on evidentiary questions...'are controlled by the discretion of the trial court and this Court will reverse only for clear abuse of that discretion."' *Commonwealth v. Cargo*, 498 Pa. 5, 444 A.2d 639, 644 (1982) (quoting *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140, 146 (1976)). "Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 625 A.2d 1181, 1185 (1993) (citation omitted).

¶ 9 Our supreme court has consistently defined "excited utterance" as:

[A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Allen v. Mack*, 345 Pa. 407, 28 A.2d 783, 784 (1942); *accord Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110, 119–20 (2001); Pa.R.E. 803(2); *see also Commonwealth v. Zukauskas*, 501 Pa. 500, 462 A.2d 236, 237 (1983) (describing an excited utterance as "the event speaking and not the speaker."). In determining whether a statement is an excited utterance, we have considered the following:

1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. *Commonwealth v. Blackwell*, 343 Pa.Super. 201, 211, 494 A.2d 426, 431 (1985). (Citations omitted) These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. "It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. *Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance." Id. See also*, [*Idaho v. Wright*, 497 U.S. 805, 820–21, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)] (particularized guarantees of trustworthiness must be shown from the totality of the circumstances.)

*Commonwealth v. Sanford*, 397 Pa.Super. 581, 580 A.2d 784, 788 (1990) (alternation in original) (emphasis supplied).

[T]he crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

*Commonwealth v. Carmody*, 799 A.2d 143, 147 (Pa.Super.2002) (quoting *Commonwealth v. Gore,* 262 Pa.Super. 540, 396 A.2d 1302, 1305 (1978)).

¶ 10 Upon consideration of the aforementioned factors in light of the surrounding circumstances, we find that the statements of Keys' wife do not qualify as

an excited utterance and the trial court abused its discretion by ruling otherwise. First, thirty minutes elapsed between the end of the startling event and the statements of Keys' wife. Second, the statement was elicited eight to ten blocks away from the scene of the startling event. Third, the utterance was in response to the officer's query.[1] Finally, the utterance is a narrative of overnight events, not a single reaction to a single startling episode. Most importantly, the admission of the hearsay served to deny the accused the right of confronting and cross-examining the sole eyewitness against him.

¶ 11 It is true that our courts have previously, on occasion, liberally accepted statements as an excited utterance despite the passage of substantial time between the startling event and the utterance. We note, however, that such holdings were based upon a consideration of all the surrounding circumstances. *See Sanford, supra* (three judge panel, Cavanaugh, J., dissenting). *Compare Commonwealth v. Noble,* 371 Pa. 138, 88 A.2d 760, 763 (1952) (determining, given the circumstances, that a statement elicited at least a half-hour after the incident was not an excited utterance), *with Commonwealth v. Penn,* 497 Pa. 232, 439 A.2d 1154, 1159 (1982) (finding that "[under] the circumstances, the suppression court could reasonably conclude that the statement" made within half-hour of incident qualified as an excited utterance).

¶ 12 Moreover, no independent evidence was presented substantiating the alleged incident. *See Commonwealth v. Barnes,* 310 Pa.Super. 480, 456 A.2d 1037 (1983); *see also Commonwealth v. Upshur,* 764 A.2d 69 (Pa.Super.2000) (*en banc*) (plurality), *appeal dismissed as improvidently*

*granted,* 566 Pa. 589, 782 A.2d 538 (2001). The *Barnes* court noted, "[w]e are . . . presented with the troublesome situation in which the excited utterance itself is being used to prove that an exciting event did, in fact, occur. This circuitous reasoning is unacceptable. Where there is no independent evidence that a startling event has occurred, an alleged excited utterance cannot be admitted as an exception to the hearsay rule." *Barnes, supra* at 1040.

¶ 13 Assuming the continued efficacy of *Barnes, supra,* we similarly will not conclude that the wife's excited utterance, absent independent proof, demonstrates that the startling event occurred. We do not find that the officer's observations of her agitated state independently establishes the startling event. No testimony was presented that she did not "engage in a reflective thought process" prior to her contact with the police officer.

¶ 14 We will not speculate as to why Mrs. Keys did not appear to testify against her husband. As to the court's ruling, it may be that emergent policies in the campaign against spousal abuse militate in favor of relaxation of harsh evidentiary rules. We believe, however, that the exception to the hearsay rule as confirmed by the trial court, is inappropriate since it is unlimited in its scope. If followed, it would invalidate the sound reasoning of *Barnes, supra,* and serve to dramatically relax the rules of evidence so as to permit proof of a crime whenever the prosecutor had available a witness who has heard an excited recitation of facts constituting criminal misconduct. This is surely a matter of policy. If such a radical change in the law is to be accomplished, it must be

---

1. We recognize that statements in response to queries may be categorized as excited utter- ances.

by an act of the legislature, or by approval of the supreme court, as the case may be.

¶ 15 We find that the court erred in denying Keys' writ of *certiorari*. The trial court abused its discretion in admitting the statements. We therefore grant a new trial.

¶ 16 Order reversed. New trial ordered. Jurisdiction relinquished.

¶ 17 HUDOCK, J., files a dissenting statement.

HUDOCK, J., Dissenting.

¶ 1 Respectfully, I dissent. The majority maintains that the victim's statement did not qualify as an excited utterance because of the separation in time and space between it and the exciting event, and also because it was made in response to police questioning. This was an ongoing incident in which Appellant held a sword to the victim's neck, threatened to cut her throat, dragged her by the hair, and held her prisoner in her own home against her will overnight. On appeal, Appellant concedes that the event in question did not end until the victim escaped from the house. Appellant's Brief at 12.

¶ 2 The majority cites the fact that the victim's statement was made eight to ten blocks from the scene of the event. However, this was only because the victim fled in order to escape from her husband. She traveled the entire distance while running. She then immediately called the police. When a police officer arrived, she remained upset and angry. Her voice and behavior were distraught and erratic. Her statement to the officer was made while she was still visibly experiencing the emotion of the events less than half an hour after her escape from this terrifying episode. The fact that a statement was not made immediately after a startling event is not dispositive of its admissibility as an excited utterance. *Commonwealth v. Carpenter*, 555 Pa. 434, 457–58, 725 A.2d 154, 165–66 (1999). The crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective process remains in abeyance. *Commonwealth v. Carmody*, 799 A.2d 143, 147 (Pa.Super.2002). As this Court has stated, while there is no fixed time limit within which declarations must be made to be properly considered excited utterances, "we are satisfied that a thirty minute period is not so extreme as to preclude admission of ... declarations under the excited utterance exception." *Commonwealth v. Hess*, 270 Pa.Super. 501, 411 A.2d 830, 834 (1979). In *Commonwealth v. Sanford*, 397 Pa.Super. 581, 580 A.2d 784 (1990), we held that a statement, in response to an inquiry made in the evening about an event that most likely occurred in the morning and in a separate residence, qualified as an excited utterance. Responses to questions are not *per se* excluded from consideration as excited utterances, even though one might conclude that such responses require the kind of reflection that precludes statements from qualifying as excited utterances. *Sanford*, 580 A.2d at 789. The victim's statement was not the result of any detailed question or prolonged interrogation. According to the responding police officer, the victim immediately "blurted out" her story while still in a state of agitation and excitement in response to his inquiry about what was wrong. In *Commonwealth v. Barnyak*, 432 Pa.Super. 483, 639 A.2d 40, 44 (1994), we held that excited utterances by a shooting victim and her son were admissible, even though they were made a half hour after the shooting and in response to police questioning, because, as was the situation with the victim in the present case, the declarants were still visibly experiencing the emotion of the event.

¶ 3 As the majority notes, this Court has previously held that "[w]here there is no independent evidence that a startling event had occurred, an alleged excited utterance cannot be admitted as an exception to the hearsay rule." *Commonwealth v. Barnes*, 310 Pa.Super. 480, 456 A.2d 1037, 1040 (1983). In the present case, the police officer observed the victim's agitated emotional state at the location to which she immediately fled upon escaping. The victim went with him to the scene of the crime, where they found Appellant. The officer recovered the sword used by Appellant to threaten the victim, located in the place that the victim had described. These circumstances all corroborated the victim's story.

¶ 4 For these reasons, I would conclude that the trial court did not abuse its discretion by determining that the victim's statement was admissible as an excited utterance.