J-S67004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES TORRES | : | |
| | : | No. 3018 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence August 29, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007724-2014

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED NOVEMBER 02, 2017**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant James Torres' conviction by a jury on the charge of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1).  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On April 6, 2014, Appellant was arrested in connection with alleged offenses occurring on Erie Avenue in Philadelphia against a father and son, Angel and Donovan Leon, and at lower court docket numbers MC-51-CR-0011023-2014 and MC-51-CR-0011024-2014, Appellant was charged with robbery, robbery of a motor vehicle, and several other lesser offenses.

Additionally, on April 6, 2014, Appellant was arrested in connection with the assault of the police officers, who had responded to the incident involving

_____
* Former Justice specially assigned to the Superior Court.

the Leons, and at lower court docket number CP-51-CR-0007724-2014 ("the instant case"), he was charged with simple assault, aggravated assault, recklessly endangering another person, and resisting arrest.

Subsequently, the Leons failed to appear at Appellant's preliminary hearing, and the Commonwealth withdrew the charges filed at lower court docket numbers MC-51-CR-0011023-2014 and MC-51-CR-0011024-2014. However, following a preliminary hearing on July 2, 2014, Appellant was held for court on all charges filed in the instant case.

On August 5, 2015, prior to Appellant's jury trial with regard to the instant case, Appellant filed a counseled pre-trial motion *in limine* seeking to preclude the Commonwealth from presenting certain testimony at trial. Specifically, Appellant sought to preclude Officers Joseph Carter and Joseph Wolk, the responding officers, from testifying as to out-of-court statements the Leons made to them upon arrival at the scene on April 6, 2014.[1] N.T., 3/15/16, at 4. The trial court denied the motion *in limine*, and on March 15, 2016, with the prosecution moving solely on the charge of aggravated assault as to Officer Carter,[2] Appellant proceeded to a jury trial.

---

[1] Appellant specifically sought to preclude the officers from testifying that the Leons told them Appellant had climbed on top of their car, tried to get into their car, and punched the older Leon who was sitting in the passenger seat. N.T., 3/15/16, at 4-5, 10.

[2] The Commonwealth *nolle prossed* the remaining charges in the instant case.

The trial court has adequately summarized the testimony presented at the jury trial as follows:

> [O]n the evening of April 6, 2014, the police were called to the 500 block of West Erie Avenue in Philadelphia. When Officers Carter and Wolk responded to the scene[,] they observed cars double-parked, traffic at a standstill, and a large crowd of people in the intersection. N.T.[,] 3/15/16, [at] 27-28. Upon exiting their vehicle, the police observed [Appellant] and another male engaged in a [physical altercation]. [Officer Carter testified] two men from the crowd (the Leons) approached the officers and told them that [Appellant] had approached the passenger side of their vehicle, punched [the] older [Leon] in the face, jumped on top of the car, proceeded over to the driver's side of the vehicle[,] and attempted to pull the [younger Leon] out of the car. [*Id.* at 33-35.]
>
> The officers [then] proceeded to break up the fight and arrest [Appellant,] at which time [Appellant] punched Officer Carter. Officer Wolk helped to restrain [Appellant], whose odd behavior included telling the policemen to kill him, as well as purposefully licking the ground and the patrol car tires. [*Id.* at 34-37.] [Appellant] was eventually placed in custody and carried to a police wagon, as he refused to stand or cooperate in any [manner]. [*Id.* at 38-40.]

Trial Court Opinion, filed 1/4/17, at 2.

At the conclusion of the jury trial, the jury convicted Appellant of aggravated assault as to Officer Carter, and on August 29, 2016, he was sentenced to time in to twenty-three months in prison, to be followed by five years of probation. This timely counseled appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant argues the trial court erred in denying his pre-trial motion *in limine* and permitting Officer Carter to testify about the out-of-court

statements made to him by the Leons.[3] Appellant specifically contends: (1) the officer's testimony constituted impermissible evidence of other crimes, wrongs, or acts, which did not satisfy the narrow exception under Pa.R.E. 404(b); (2) the officer's testimony constituted inadmissible hearsay not subject to any exception; (3) the officer's testimony was violative of Appellant's right of confrontation since the statements were testimonial in nature; and (4) the prejudicial impact of the testimony outweighed the probative value such that the testimony should have been excluded under Pa.R.E. 403.

Initially, we note that Appellant is challenging the following portion of Officer Carter's direct-examination:

> **Q:** When you first get out of your car, what happened?
>
> **A:** Soon as I exited my car, the two individuals with the prior incident were coming up to us telling us what had happened, what happened[.] At—at this time we tried to break up the fight between [Appellant] and the other male, and we did eventually break it up. I tried to arrest [Appellant].
>
> **Q:** So there's two individuals. Do you know their names?
>
> **A:** Angel Leon and his—I don't recall the other guy's name. They were family, I think father and son.
>
> **Q:** Father and son?
>
> **A:** Yes.
>
> **Q:** Angel was the father?
>
> **A:** Yes.
>
> **Q:** Before you tell us what they said, describe their demeanor, what they were like when they came up to you.

---

[3] Appellant has pointed to no testimony offered by Officer Wolk at trial as to out-of-court statements made to him at the scene by the Leons.

**A:** They were very excited. As a matter of fact, to-the-point, ten-second interaction with them. We had—very excited, I would say, and emotional.

**Q:** Did you go up to them, or did they come to you?

**A:** We were basically within 20 feet of each other, but they came more to us as we approached [Appellant] and the other male.

**Q:** What if anything did they say?

> **[Appellant's counsel]:** Objection.

> **The Court:** Overruled.

**Q:** Continue.

**A:** The older male who was a passenger, I believe Angel, said that [Appellant] went to the passenger side of his vehicle at the red light at 500 West Erie and basically punch[ed] the passenger, jumped on top of the car, and….

**Q:** That's the older gentleman? Sorry.

**A:** Yes.

**Q:** Don't—

**A:** Jumped on top of the car, punched the older gentleman who was a passenger. And the passenger's son, the younger male, of course, attempted to pull him out of the car.

**Q:** Wait. Who pulled—the son tried to pull someone—

**A:** No. [Appellant] went. Once [Appellant] was on--done with the passenger side of the car, he jumped on top of the hood of the car, went to the driver's side of the car.

**Q:** Did what?

**A:** He attempted to pull the operator out of the car.

**Q:** Okay. And did they say anything else about what happened?

**A:** No, not that I remember.

**Q:** Did they say anything about how the fight started, if they did? If not, that's fine.

**A:** They said they were—it was random.

N.T., 3/15/16, at 32-34.

In reviewing Appellant's specific evidentiary claims, we note "the admissibility of evidence is [generally] a matter addressed to the sound discretion of the trial court and an appellate court may only reverse rulings on admissibility upon a showing that the lower court abused its discretion." *Commonwealth v. May*, 540 Pa. 237, 656 A.2d 1335, 1341 (1995) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Tyson*, 119 A.3d 353, 357-58 (Pa.Super. 2015) (*en banc*) (quotation marks and quotation omitted).

With regard to Appellant's first contention, that the officer's testimony constituted impermissible evidence of other crimes, wrongs, or acts, which did not satisfy the narrow exception under Pa.R.E. 404(b), we note the following:

> "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.
>
> Pennsylvania Rule of Evidence 404(b) provides as follows:
>
> **Rule 404. Character Evidence; Crimes or Other Acts**
>
> \* \* \*
>
> **(b) Crimes, Wrongs or Other Acts.**
>
> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular

- 6 -

> occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> *  *  *
>
> Pa.R.E. 404(b)(1)-(2). [E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes. Nevertheless, [e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character. Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident.

**Tyson**, 119 A.3d at 358 (citations, quotation marks, and quotation omitted) (bold and italics in original). Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts. **Commonwealth v. Collins**, 550 Pa. 46, 703 A.2d 418 (1997). "When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice." **Tyson**, 119 A.3d at 358 (citation omitted).

In the instant case, in determining that Officer Carter's testimony was not prohibited under Pa.R.E. 404(b), the trial court relevantly indicated the following:

> [I]t is crystal clear that the complained of testimony was admitted as part of the history of the event and a natural part of the development of the facts. The testimony delineates what

actions resulted in the police being called, as well as what was going on immediately before and as the police were arriving on the scene. It was obvious that the probative value of this evidence outweighed its potential for prejudice against [Appellant]. [Appellant's] continuing crime spree established the sequence of events that led up to the assault upon the police officer and was admissible for that purpose.

Trial Court Opinion, filed 1/4/17, at 4 (citation omitted).

We agree with the trial court that the evidence complained of formed part of the natural development of the facts and history of this case. Moreover, we find no abuse of discretion in the trial court's conclusion that the probative value of the evidence outweighed its potential for prejudice. *See Tyson*, *supra*. Accordingly, we find no merit to Appellant's first contention.

With regard to Appellant's next contention, that the officer's testimony constituted inadmissible hearsay not subject to any exception, we note that hearsay is defined as "a statement that. . .the declarant does not make while testifying at the current trial or hearing [and that] a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Hearsay is generally not admissible unless subject to an exception. Pa.R.E. 802.

In the case *sub judice*, there is no doubt that Officer Carter's testimony as to what the Leons stated to him at the scene constitutes hearsay. However, the Pennsylvania Rules of Evidence provide an exception to the hearsay rule for "excited utterances." Pa.R.E. 803. An "excited utterance" is "a statement

relating to a startling event or condition, made while the declarant was under the stress or excitement that it caused." Pa.R.E. 803(2). "[T]his declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from [a person's] reflective faculties[.]" *Commonwealth v. Murray*, 623 Pa. 506, 83 A.3d 137, 157 (2013) (citation and quotation omitted).

> In determining whether a statement is an excited utterance, we have considered the following: 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception.

*Commonwealth v. Keys*, 814 A.2d 1256, 1258 (Pa.Super. 2003) (citation and quotation omitted). Courts must assess these four factors in light of the surrounding circumstances to determine whether a statement is an excited utterance. *Id.*

Here, Officer Carter testified that he and his partner responded to an intersection where the cars were double-parked, traffic was stopped, and a large group of people were gathered. N.T., 3/15/16, at 28. They also observed a physical altercation occurring between Appellant and another man. *Id.* at 28. As "[s]oon as [Officer Carter] exited [his] car," the Leons approached him and informed him about Appellant's recent attempt to car-

jack them. *Id.* at 32. Officer Carter described the Leons as "excited," "to the point," and "emotional." *Id.*

We conclude the Leons witnessed a startling event, the time between the event and their declarations to Officer Carter was short, the statements were not in narrative form, and there is no indication they spoke to others before making the statements at the scene to Officer Carter. *See Keys*, *supra*. Furthermore, Officer Carter's description of the Leons' demeanor assisted the trial court in determining that, when the Leons made the statements, they were under the stress of the excitement caused by the event. Pa.R.E. 803(2). Thus, we agree the Leons' statements were made so near the occurrence, both in time and place, as to exclude the likelihood that the statements emanated, in whole or in part, from their reflective faculties, and consequently, the trial court did not err in ruling the Leons' statements to Officer Carter were admissible under the excited utterance exception to the hearsay rule. *Murray*, *supra*.

With regard to Appellant's next contention, that Officer Carter's testimony regarding the Leons' out-of-court statements violated Appellant's right of confrontation as provided for in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), we initially note that, as indicated *supra*, our standard of review of a trial court's evidentiary ruling is generally whether the trial court abused its discretion; however, "[an] assertion of a Confrontation Clause violation presents an issue of law. [Thus,] [o]ur scope of review is

plenary and our standard of review is *de novo."* ***Commonwealth v. Williams***, 103 A.3d 354, 358 (Pa.Super. 2014) (citation omitted).

Relevantly, the Pennsylvania Supreme Court has explained:

> Under both the United States Constitution and the Pennsylvania Constitution, the right to confrontation specifically guarantees a person accused of a crime the right to be confronted with the witnesses against him. As the United States Supreme Court has explained, the right to confrontation is basically a trial right, and includes both the opportunity for cross-examination of the witnesses and the occasion for the jury to consider the demeanor of the witnesses. The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.

***Commonwealth v. Williams***, 624 Pa. 183, 84 A.3d 680, 684 (2014)

(citations, quotation marks, and quotations omitted).

Further, in examining the jurisprudence regarding the Confrontation Clause, this Court has noted:

> The principle evil at which the Confrontation Clause was directed was the civil-law mode of procedure, and particularly its use of *ex parte* communications as evidence against the accused. Likewise, the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination. The [United States Supreme] Court [in the seminal case of ***Crawford***, ***supra***] found no occasion to offer a comprehensive definition of [the term] testimonial. Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.
>
> * * *
>
> [In a decision following ***Crawford***, the United States Supreme Court] distinguished testimonial and nontestimonial hearsay:

- 11 -

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
>
> The [United States] Supreme Court confirmed that the protection of the Confrontation Clause attaches only to testimonial hearsay.
>
> * * *
>
> [T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred. The existence of an ongoing emergency is important because it indicates that the declarant's purpose in speaking was to help resolve a dangerous situation rather than prove past events[.]

**Williams**, 103 A.3d at 358-61 (citations, quotation marks, and quotations omitted).

In the instant case, we conclude the Leons' statements, which were made to the police as soon as they arrived on the scene and which described Appellant's actions immediately prior to the officers' arrival, were made as the physical encounter between Appellant and another man was ongoing.[4] This physical encounter was blocking an intersection, thus causing traffic to be at a stand-still with a large crowd of onlookers gathering in the intersection.

_____

[4] We will assume, *arguendo*, that the Leons' statements were made, at least in part, in response to police questioning.

- 12 -

Accordingly, viewing the circumstances objectively, we find that the police questioning and the Leons' statements were made with the purpose of assisting the police with an ongoing emergency, and consequently, the Leons' statements were non-testimonial in nature. Moreover, Appellant had the opportunity to confront and cross-examine the responding police officers regarding the Leons' statements at trial. As such, we discern no violation of the Confrontation Clause by the trial court's admission of the Leons' statements at trial. **See id.**

With regard to Appellant's final contention, that the prejudicial impact of Officer Carter's testimony outweighed the probative value such that the testimony should have been excluded under Pa.R.E. 403, we touched upon and rejected Appellant's claim *supra*. In any event, we recognize the following:

> The probative value of evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence. Pa.R.E. 403. The comment to Pa.R.E. 403 instructs that: "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt.

**Commonwealth v. Page**, 965 A.2d 1212, 1220 (Pa.Super. 2009).

However, evidence will not be prohibited merely because it is harmful to the defendant. **See id.** As our Supreme Court has indicated, the trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration [particularly] where those facts are relevant to the issues

- 13 -

at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." ***Commonwealth v. Lark***, 518 Pa. 290, 543 A.2d 491, 501 (1988).

In the case *sub judice*, we conclude the trial court did not abuse its discretion in concluding Officer Carter's testimony was not unduly prejudicial to Appellant. Thus, the trial court did not err in admitting the evidence under Pa.R.E. 403.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/2/2017