J-S43004-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| VALERIE ELIZABETH TOOMEY | : | No. 1781 WDA 2019 |

Appeal from the Order Entered November 20, 2019
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  CP-10-CR-0001617-2018

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY SHOGAN, J.:                    FILED JANUARY 05, 2021

The Commonwealth appeals from the order entered November 20, 2019, in the Court of Common Pleas of Butler County, denying its motion in limine seeking to have the victim's statement admitted as evidence at trial.[1] We reverse.

_____

[1]  Under Pa.R.A.P. 311(d), in criminal cases the Commonwealth has a right to appeal an interlocutory order if the Commonwealth certifies in a notice of appeal that that order "will terminate or substantially handicap the prosecution."  Pa.R.A.P. 331(d).  The Supreme Court of Pennsylvania has held that we have jurisdiction to hear an appeal from an interlocutory order denying a motion in limine that has the effect of terminating or substantially handicapping the prosecution.  Commonwealth v. Matis, 710 A.2d 12, 17 (Pa. 1998).  Here, the Commonwealth has certified that the trial court's order denying part of their motion in limine will terminate or substantially handicap its case.  Notice of Appeal, 12/2/19, at 3.  Therefore, under Pa.R.A.P. 311(d), we have jurisdiction to hear this appeal from the trial court's interlocutory order.

The trial court summarized the factual and procedural history of this case as follows:

By Information filed on October 4, 2018, [Appellant] is charged with one count of simple assault (18 Pa.C.S.A. § 2701(a)(1)) and one count of harassment (18 Pa.C.S.A. § 2709(a)(1)). [Appellant] was employed at the Butler YWCA personal care home and the alleged victim, Geraldine Heade, [("Victim")] age 83, was a resident of the home. The charges stem from an alleged encounter [Appellant] had with Mrs. Heade on the evening of June 22, 2018 at the personal care home.

The case was originally scheduled for trial in January, 2019; then, every month thereafter, due to defense continuances or the Commonwealth failing to call the case for trial, jury selection was finally held on November 14, 2019[,] and the trial was scheduled to begin on November 19, 2019. On the morning of the first day of the jury trial, prior to the jury being sworn, the Commonwealth submitted a "Motion in Limine to Admit Victim's Statement", seeking to admit Mrs. Heade's statements made to her daughter, Pamela Stevenson, on June 23, 2018 pursuant to the excited utterance and present sense impression exceptions to the hearsay rule. According to the motion, "the victim Geraldine Heade is suffering from the onset of dementia and is often unable to recall the events surrounding said assault." Motion in Limine to Admit Victim's Statement, para. 7, pg. 1.

The relevant portions of the motion in relation to the exact statements that the Commonwealth wished to submit are as follows: At para. 3. - "Following the incident, victim Heade had a phone call from her daughter, Pamela Stevenson and relayed to her the events surrounding the assault." At para. 4. "The victim's daughter arrived at the residential home a few hours later to find the victim with bruises on her body. Photographs were then taken." At para. 8. - "The Commonwealth is seeking admission of the victim's statement given to her daughter and to investigating officer, Sgt. Benjamin Spangler, of the Butler City Police Department."

The [c]ourt held a hearing on the motion on November 19, 2019 and the [c]ourt asked Assistant District Attorney Schultz to proffer the statement she wished to admit. She responded, "She, her daughter called her and said, she hurt me. That's what she

specifically said to her daughter. She then—her daughter then went to the YWCA and her mother proceeded to say what was happening." N.T., Motion in Limine, November 19, 2019, pg. 2. At [the] hearing, the A.D.A. explained that Mrs. Heade was no longer able to remember the details of the incident and therefore, could not testify as to them. The Court asked the A.D.A. for the exact statement she wished to have the daughter, Ms. Stevenson, testify to and the A.D.A. replied, "The aide with the scrub hat hurt me." Id. at pg. 3. The A.D.A. indicated that she believed that statement was what prompted Ms. Stevenson to go to the YWCA that morning. Id. However, it is not clear from the record when this statement was made; that is, whether it was made during the phone call between Mrs. Heade and Ms. Stevenson preceding Ms. Stevenson's visit to the YWCA that morning or after Ms. Stevenson arrived and spoke with her mother in person.[1]

> [1] If the Commonwealth had offered that statement to show why Ms. Stevenson went to the YWCA that morning and not for its truth, it would have been admissible.

The Commonwealth also proffered to use a statement made by Mrs. Heade on September 10, 2019 at the District Magistrate's office, the day scheduled for the preliminary hearing. Apparently, Mrs. Heade saw [Appellant] walking down the hall and stated, "That's her." Id. at pg. 4.

At the Motion in Limine hearing, Defense Attorney Charles Nedz argued that the statement proffered to have been given on June 23, 2018 occurred several hours after the alleged incident occurred and was in fact part of a very detailed statement by Mrs. Heade to her daughter, Ms. Stevenson. Id. at pg. 6. Attorney Nedz read the statement prepared by Ms. Stevenson into the record. It follows:

> I called mom 6/23/18 in the morning. That's the date, 6/23/18. She was crying saying the aide with the scrub hat on hurt her. She said that she pulled her arm and now she can't lift it. Mom said that—mom said—mom said she had the remote in her hand and said she wanted to finish watching the movie and the girl pulled the remote out of her hand and hurt her arm. Then mom said the girl pulled her up by both arms squeezing her that she couldn't breathe. She

- 3 -

said she was saying you have to get your PJs on. That she didn't—didn't have time to wait. Mom said that the girl started shaking her and she was losing her balance. Mom—and when mom started to push off of her, the girl grabbed both of her arms together—hands together and squeezed them. And when mom got her hands loose, the girl started to swat at the back of her head and punch her in the left chest. Mom said she fell back into the chair and the girl left. I asked mom if anyone came in that night to check on her. And she said, no, that she sat in the chair all night crying in pain. I asked mom if she told anyone in the morning—….

Id. at pg. 10.

At the conclusion of the hearing, the [c]ourt denied the motion. The Commonwealth stated that it would appeal the [c]ourt's decision, whereupon the [c]ourt released the jury.

Trial Court Opinion, 1/31/20, at 1-3.

The Commonwealth filed a timely notice of appeal. The Commonwealth and the trial court complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth presents the following issue for our review: "Whether the trial court erred in denying Appellant's motion in limine to admit Victim's statement as an excited utterance exception to hearsay testimony; where said statement was sufficiently contemporaneous to a shocking and startling event as to render the statement a dependable spontaneous reaction to said event?"[2] Commonwealth's Brief at 5.

_____

[2] While the Commonwealth's Statement of Questions Involved lists a second issue, it states in the Argument section of its brief: "Having further reviewed the record and corresponding law, the Commonwealth withdraws its second issue for consideration on appeal." Commonwealth's Brief at 20.

In its motion in limine, the Commonwealth sought to admit testimonial evidence pursuant to the excited utterance exception to the hearsay rule. Commonwealth's Brief at 11. Specifically, the Commonwealth sought to introduce the statement, "[T]he aide with the scrub hat hurt me," allegedly made by Victim to her daughter shortly after the incident. Id. In light of Victim's advancing dementia, the Commonwealth sought to have this statement introduced through the testimony of Victim's daughter. Id. at 16. Although the incident occurred at approximately 9:00 pm on the night of June 22, 2018, Victim made the statement to her daughter the next morning on the phone, the first time Victim spoke to her daughter after the incident. Id. at 16-17. When Victim shared this information with her daughter, Victim "was very emotional, and obviously in tears." Id. at 16. Upon seeing Victim that day, the daughter observed bruises on Victim's hands, arms, and shoulders. Id. at 16. Victim's daughter took Victim to a local hospital and subsequently contacted the police. Id. at 16. The Commonwealth contends that Victim in fact witnessed a startling event. Id. at 17. Further, the trial court was required to review surrounding circumstances and consider whether those circumstances suggest that Victim was still under the nervous excitement of the starting event, given the facts the she was elderly, had cognitive limitations, and lived in an assisted living facility. Id. at 17. Furthermore, Victim spoke at her first opportunity to someone she trusted, her daughter. Id. at 17. The Commonwealth maintains that the trial court

erred in failing to consider these additional circumstances, which made obvious the reliability of Victim's statement. Id. at 18.

We apply the following standard in reviewing an order denying a motion in limine:

> When reviewing the denial of a motion in limine, we apply an evidentiary abuse of discretion standard of review. See Commonwealth v. Zugay, 2000 PA Super 15, 745 A.2d 639 (Pa.Super.), appeal denied, 568 Pa. 662, 795 A.2d 976 (Pa.2000) (explaining that because a motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to a ruling on a motion to suppress evidence, our standard of review of a motion in limine is the same as that of a motion to suppress). The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion. See Commonwealth v. Albrecht, 554 Pa. 31, 720 A.2d 693, 704 (Pa.1999) [affirmed in part, vacated in part on other grounds and remanded, 471 F.3d 435 (3d Cir.Pa.2006)].

Commonwealth v. Stokes, 78 A.3d 644, 654 (Pa. Super. 2013) (some internal citations omitted).

Pennsylvania Rule of Evidence 801 defines hearsay as follows:

Rule 801. Definitions That Apply to This Article

(a) Statement. "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

(b) Declarant. "Declarant" means the person who made statement.

(c) Hearsay. "Hearsay" means a statement that

> (1) the declarant does not make while testifying at the current trial or hearing; and

> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801.

Pennsylvania Rule of Evidence 803 sets forth exceptions to the hearsay

rule, in pertinent part, as follows:

> Rule 803.   Exceptions to the Rule Against Hearsay—
> Regardless of Whether the Declarant Is Available as a
> Witness
>
> The following are not excluded by the rule against hearsay,
> regardless of whether the declarant is available as a witness:
>
> * * *
>
> (2) Excited Utterance.  A statement relating to a startling event
> or condition, made while the declarant was under the stress of
> excitement that it caused. …

Pa.R.E. 803(2).

> The Comment to Pa.R.E. 830(2), related to excited utterances, states:
>
> This exception has a more narrow base than the exception for a
> present sense impression, because it requires an event or
> condition that is startling.  However, it is broader in scope because
> an excited utterance (1) need not describe or explain the startling
> event or condition; it need only relate to it, and (2) need not be
> made contemporaneously with, or immediately after, the startling
> event.  It is sufficient if the stress of excitement created by the
> startling event or condition persists as a substantial factor in
> provoking the utterance.
>
> There is no set time interval following a startling event or
> condition after which an utterance relating to it will be
> ineligible for exception to the hearsay rule as an excited
> utterance.  In Commonwealth v. Gore, 396 A.2d 1302, 1305
> (Pa. Super. 1978), the court explained:
>
>> The   declaration   need   not   be   strictly
>> contemporaneous with the existing cause, nor is
>> there a definite and fixed time limit … Rather,
>> each case must be judged on its own facts, and

> a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." … The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

Pa.R.E. 803(2), comment (emphases added).

Our Supreme Court has consistently defined "excited utterance" as:

> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

Commonwealth v. Keys, 814 A.2d 1256, 1258 (Pa. Super. 2003).

In determining whether a statement is an excited utterance, we have considered the following:

> 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance.

> The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous

excitement continues to dominate while the reflective processes remain in abeyance.

Keys, 814 A.2d at 1258 (internal citations and quotation marks omitted).

In explaining its reasons for denying the motion in limine, the trial court stated:

> After reviewing the requirements of the exceptions . . ., the [c]ourt concludes that the issues raised on appeal are without merit. It is believed that the incident occurred on the evening of June 22, 2018[,] at approximately 9:00 p.m. and the victim's statements were made sometime on the morning of June 23, 2018. . . . . The excited utterance exception fails because the victim gave a detailed account of the incident the next morning after she had time to reflect and the "stress of excitement created by the startling event or condition" was not a "substantial factor in provoking the utterance."

Trial Court Opinion, 1/31/20, at 3-4.[3]

We disagree with the trial court. The evidence of record establishes that Victim, at the time of the statement to her daughter, was still dominated by the nervous excitement of the event. At the hearing on the motion in limine, the evidence established that daughter spoke to Victim on the morning of

_____

[3] We also note that the trial court stated that the Commonwealth's Pa.R.A.P. 1925(b) statement "does not clearly reveal what specific statements the Commonwealth seeks to admit; nor do the issues raised on appeal disclose those statements," therefore constituting waiver of this issue. Trial Court Opinion, 1/31/20, at 3. The trial court further opined, in the alternative, that it would surmise that the statement "The aide with the scrub hat on hurt me," is the statement the Commonwealth sought to admit through its offer of proof. Id. We find that the statement sought to be admitted by the Commonwealth, "[T]he aide with the scrub hat on hurt me," was made sufficiently clear at the hearing on the motion in limine, and we will proceed with our analysis as to that statement only. Thus, we do not find the issue to be waived.

June 23, 2018. N.T., 11/19/13, at 10. During that conversation, Victim was crying and said, "[T]he aide with the scrub hat on hurt me." Id. at 3, 10. The incident occurred at 9:00 p.m. on the evening before this conversation. Id. at 6. Victim stated that she had been up all night crying in pain after the incident, and that no one had checked on her overnight. Id. at 10. The evidence also indicated that Victim said she was afraid to say anything to the staff at the facility because they might get mad and hurt her again. Id. at 10. Victim's assertion resulted in her daughter proceeding to the assisted living facility and an investigation ensued. Id. at 3. When her daughter arrived at the facility, Victim again reiterated that the aide hurt her. Id.

As case law outlines, "[F]actors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance." Keys, 814 A.2d at 1258. In the case herein, it is undisputed that a startling event occurred.[4] While there was a lapse of time between the incident and Victim's statement to her daughter, the lapse of time alone is not dispositive. As has been explained, "The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." Keys, 814 A.2d at 1258. The evidence presented at the hearing

_____

[4] At the hearing, the trial court stated: "That—the question is whether or not it's—the event is such an event that would cause someone to make an excited utterance. And I don't think there is any question that the allegations here that an elderly person is injured meets that criteria." N.T., 11/19/19, at 8.

- 10 -

indicates that at the time the statement was made by Victim to her daughter, that the nervous excitement from the event continued to dominate Victim, while her reflective processes remained in abeyance. Victim was elderly, had declining cognition, and resided in a nursing home, likely having limited ability to contact a trusted individual. The evidence reflected that Victim stayed awake crying through the night, and no one checked on her. Thus, the evidence supports the conclusion that Victim remained under the "nervous excitement" of the event, and that she did not speak to other individuals before making the statement. Further, Victim stated that she did not feel safe speaking of the incident to other staff members for fear of retaliation. Victim's conversation with her daughter in the morning after the incident was Victim's first opportunity to speak to a trusted individual. This Court has held that in circumstances where time has elapsed between an incident and the reporting of the incident by a child to a trusted adult at first given opportunity, such passage of time does not result in inadmissibility of statement under the excited utterance exception. Commonwealth v. Sherwood, 982 A.2d 483, 496 (Pa. 2009). Given all of the surrounding circumstances in this case, we cannot agree the amount of time that elapsed should preclude admission of Victim's statement.

Thus, we conclude the trial court abused its discretion in denying the Commonwealth's motion in limine to introduce the statement, "[T]he aide with the scrub hat on hurt me." Obviously, the finder-of-fact can consider the

veracity of that statement, as with any other statement entered into evidence, in determining Appellee's guilt or innocence.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2021