J-S03033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SELINA PEREZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN SANTIAGO | : | |
| | : | |
| Appellant | : | No. 2352 EDA 2022 |

Appeal from the Order Entered August 15, 2022
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s):  0C2107734

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED AUGUST 7, 2023**

Jonathan Santiago ("Father") appeals from the order awarding him and Selina Perez ("Mother") shared legal custody of their daughter, A.S., born in May 2018, with Mother to have primary physical custody and Father to have partial physical custody subject to an exclusion of a member of Father's current household.  We affirm in part, vacate in part, and remand for further proceedings consistent with this decision.

We summarize the relevant facts and procedural history from the record.  Mother and Father were never married but lived together with A.S. in Father's house in Philadelphia.  *See* N.T., 8/15/22, at 142.  In early July 2021, Father began communicating with another woman, C.M.  *See id*. at 254-55.  Mother and Father got into a fight over C.M., and, according to Father, Mother punched him, got a knife, and damaged his property.  *See id*. at 79, 152-53, 157-58, 160.

Father filed for a petition for protection from abuse ("PFA") order shortly after the fight, and he obtained a temporary *ex parte* PFA order. ***See id***. at 151-52. Mother moved into her own apartment.[1]

In August 2021, Father began moving into C.M.'s home in Montgomery County, where she lived with her then-thirteen-year-old son, M.C. ***See id***. at 254. By October 2021, Father was living full-time in C.M.'s home. ***See id***. at 173. A.S. had a separate bedroom in the home next to M.C.'s bedroom.

Shortly before Father moved in with C.M. full-time, Mother was bathing then-three-year-old A.S. As Mother washed A.S.'s genitalia, A.S. stated that "M[.]" touched her "deto," a term Mother and her family used for vagina or private parts. ***See id***. at 69-74. Mother initially believed that A.S. was referring to A.S.'s cousin named M.[2] ***See id***. at 71. That evening, Mother called that cousin's mother ("Paternal Aunt") and learned that C.M. also had a son named M. ***See id***. at 71.

Mother took A.S. to a hospital the following day. ***See id***. at 29-30, 85. Paternal Aunt went to the hospital and waited with A.S. while Mother was speaking to the doctor. ***See id***. at 33. A.S. told Paternal Aunt that "[M.]

_____

[1] Mother had an apartment in Philadelphia. By the time of the hearing, Mother moved to Delaware County.

[2] The record indicates that when reporting the inappropriate touching, A.S. only used the first name, "M.," which was the first name of C.M.'s son, with whom Father lived, and A.S.'s cousin. There is no indication in the record before us that A.S. specifically identified which M. had inappropriately touched her.

touched her on her booty" as A.S. patted her own buttocks. *Id*. A.S.'s paternal grandmother ("Paternal Grandmother") testified that a few days later, she was bathing A.S., when A.S. told her, "[M.] touched me." *See id*. at 51, 54-55. There were no facts in the trial record as to when this event occurred or even an approximation of timing in relation to when Mother, Paternal Aunt, and Paternal Grandmother obtained the information from A.S.

Shortly after learning of these reports, Mother filed a custody complaint seeking primary physical custody and sole legal custody of A.S. From October 2021 to November 2021, Mother withheld A.S. from Father because she did not want A.S. to be near M.C. *See id.* at 100-01. When Mother told Father about the reasons for keeping A.S. from him, Father did not believe the reports. *See id*. at 101. However, Father managed to regain physical custody of A.S.

Mother filed an amended custody complaint due to her "continued concerns about [A.S.]'s safety in the presence of [M.C. in C.M.'s home]." Amended Complaint for Custody, 12/6/21. From December 2021 to January 2022, Father withheld A.S. from Mother. *See* N.T., 8/15/22, at 101.

In January 2022, the trial court entered a temporary agreed-upon order for Mother and Father to share legal and physical custody of A.S.. Father subsequently filed a counterclaim for custody and moved for a mental health assessment and a home investigation of Mother. The trial court ordered, *inter alia*, that each party submit to a psychological evaluation, if they could acquire

one at a cost of under $500 each, or to mutually agree to submit a custody evaluation. Neither party underwent a psychological evaluation or a custody evaluation.

In August 2022, the trial court held a hearing on Mother's and Father's custody claims. Mother and Father discussed Mother's intent to admit testimony concerning A.S.'s reports of being inappropriately touched by "M." pursuant to the Tender Years Act.[3] Father objected on the basis of "hearsay" and the trial court's failure to hold a pre-trial hearing. The trial court reserved ruling on Mother's proffer and Father's objections until it examined A.S. *See id*. at 7-12. During opening arguments, Father's counsel stated that Father intended to testify concerning Mother's mental health. However, the trial court ruled it would not hear testimony regarding any mental health conditions because neither party completed a custody or psychological evaluation before the hearing; Father's counsel responded, "Okay." *See id*. at 24. Mother's counsel argued that Mother was seeking primary physical custody due to Father's failures to take any actions concerning A.S.'s reports that an individual named M. had inappropriately touched her. *See id*. at 22-23.

Mother testified on her own behalf, and she presented testimony from Paternal Aunt, Paternal Grandmother, and her boyfriend, A.G. Mother, Paternal Aunt, and Paternal Grandmother all testified about A.S.'s reports that

---

[3] *See* 42 Pa.C.S.A. § 5985.1.

M. had inappropriately touched her.[4]  Father testified on his own behalf, and he presented the testimony of his girlfriend, C.M.  Mother and Father both testified about the difficulties they had communicating with each other.  The trial court also conducted an *in camera* interview with A.S., after which the court determined that she was not competent to testify because she did not understand the difference between a truth and a lie.  *See id*. at 81.

During his case-in-chief, Father, in relevant part, explained that he learned of A.S.'s reports that M. had inappropriately touched her in October 2021, but he claimed that Mother, Paternal Aunt, and Paternal Grandmother fabricated the allegations.  *See id*. at 260.  Father asserted that Paternal Aunt and Paternal Grandmother had ulterior motives to testify because he stopped helping them financially and A.S. began spending more time with C.M. and less time with Paternal Grandmother.  *See id*. at 232-36.  When asked to explain what steps he and C.M. took after learning of A.S.'s report, Father testified that he spoke to A.S. when he was able to see her in December 2021.  *See id*. at 174-76.  C.M. testified that she did not speak with M.C. about the allegation because she did not want to upset him.  *See id*. at 275.

---

[4] As noted above, the trial court reserved ruling on Mother's motions *in limine* to admit A.S.'s reports for substantive purposes and Father's objections based on hearsay, A.S.'s incompetence as a witness, and taint.  *See* N.T., 8/15/22, at 7-14, 33, 53.

At the conclusion of the hearing, the trial court admitted the testimony about A.S.'s reports that M. touched as excited utterances.[5] *See id*. at 311. The trial court then entered on the record its findings regarding the best interest factors. *See id*. at 318-25; *see also* 23 Pa.C.S.A. § 5328(a). The trial court noted A.S.'s reports of abuse, DHS's involvement, and Father's PFA petition against Mother, but did not make a finding of abuse by Mother or M.C.[6] The trial court, however, found Father's lack of a response to A.S.'s reports of abuse to be detrimental to A.S.'s best interests; conversely, the trial court found that Mother responded appropriately to A.S.'s reports and weighed Mother's responses, among other factors, in her favor. *See id*. at 320-24. The trial court concluded that section 5328(a)(1), (4), (9), and (10) favored Mother and that the remaining custody factors did not favor either party. *See id*. at 318-24.

---

[5] The trial court, however, denied Mother's offer of A.S.'s reports under the Tender Years Hearsay Act and did not make any additional findings required by section 5985.1(a)(1)(ii)(B) and (a.1) (requiring a finding of a child's unavailability to testify due to serious emotional distress that would substantially impair the child's ability to communicate). *See* N.T., 8/15/22, at 311.

[6] There is no dispute that the Philadelphia Department of Human Services ("DHS") investigated A.S.'s reports of abuse. Although the trial court sustained hearsay objections to the outcome of DHS's investigation, *see* N.T., 8/15/22, at 170, the court later stated that it was aware that DHS determined that the allegations of inappropriate touching to be unfounded. *See* Trial Court Opinion, 10/19/22, at 16.

On August 15, 2022, the trial court entered the order awarding Mother and Father shared legal custody, Mother primary physical custody, and Father partial physical custody on alternating weekends. The trial court required that M.C. not be present during Father's custodial time. *See* Order, 8/15/22 (stating that Father's custodial time "was to the exclusion of M.C."). Father timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion.

Father presents the following issues for review:

A.   Whether the trial court erred and abused its discretion by finding that hearsay testimony from the non-competent [A.S.] was admissible, specifically as an excited utterance exception per Pennsylvania Rule of Evidence 803(2)?

B.   Whether the trial court erred or abused its discretion by ordering, as a safety condition or otherwise, the exclusion of M.C. from Father's custodial periods without a finding or evidence of an ongoing risk of harm to [A.S.] by M.C.?

C.   Whether the trial court erred and abused its discretion by ignoring and prohibiting evidence related to the safety and best interests of [A.S]?

Father's Brief at 6.

Our standard and scope of review of the trial court's custody decision is as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent

determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

The test is whether the evidence of record supports the trial court's conclusions.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (internal citations omitted).

"[I]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion in awarding custody to the prevailing party." *E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019) (internal citation and some quotations omitted). To that end, we have explained:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained

by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***D.Q. v. K.K.***, 241 A.3d 1112, 1117 (Pa. Super. 2020) (internal citation omitted).

In his first issue, Father challenges the trial court's admission, over his hearsay objection, of A.S.'s reports that M. inappropriately touched her. Father's challenge to the trial court's evidentiary ruling implicates the following standard of review:

The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Wilson v. Smyers***, 284 A.3d 509, 514 (Pa. Super. 2022) (internal citations and quotations omitted). Further, an evidentiary ruling, even if erroneous, must be prejudicial to the complaining party to constitute reversible error. ***See A.J.B. v. M.P.B.***, 945 A.2d 744, 751 (Pa. Super. 2008).

Hearsay is an out-of-court statement offered for the truth of the matter asserted. ***See*** Pa.R.E. 801. Hearsay is generally inadmissible unless it is subject to one of the hearsay exceptions. ***See*** Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact," ***Commonwealth v. Kriner***, 915 A.2d 653, 656 (Pa. Super. 2007) (*en banc*) (internal citation and quotation marks omitted), and the hearsay exceptions delineate certain classes of hearsay that are substantially

more trustworthy and reliable to merit their consideration for the truth of the matter assert in the out-of-court statements, *see id*.

One such exception is an excited utterance, which Rule 803(2) defines as: "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). Spontaneity is the touchstone for determining the reliability and thus the admissibility of an excited utterance, and our courts have likened an excited utterance to an event speaking through the declarant rather than the declarant speaking about an event.[7] *See Commonwealth v. Zukauskas*, 462 A.2d 236, 237 (Pa. 1983). Factors relevant to the admission of an excited utterance include:

> 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception.

_____

[7] Under the common law, the requirement of spontaneity is a question which turns on the circumstances of each case and is relaxed when the child declarant is the victim of a sexual assault. *See Commonwealth v. McEachin*, 537 A.2d 883, 889 (Pa. Super. 1988). While relaxed for child victims of sexual assault, *McEachin* does not countenance admitting hearsay statements when the record lacks a foundation for the out-of-court statement as an excited utterance, or when, as here, the statement or variations thereof were given to three different people at three different times and none of the witnesses discussed the timing of the reports in relation to purported exciting event.

*See Commonwealth v. Keys*, 814 A.2d 1256, 1258 (Pa. Super. 2003) (internal citations and emphasis omitted). Except for the requirement that the declarant witnesses a startling event, no one factor is dispositive. *See id*. Rather, a court must consider the factors in all the surrounding circumstances to determine whether a statement is an excited utterance. *See id*.

To admit an out-of-court statement as an excited utterance, there must be an event that is "startling." Pa.R.E. 803(2), Comment. An excited utterance itself, however, does not establish that a startling event occurred. *See Commonwealth v. Keys*, 814 A.2d 1256, 1259 (Pa. Super. 2003); *see also Commonwealth v. Murray*, 83 A.3d 137, 157-58 (Pa. 2013) (noting that the common law definition of an excited utterance is still applicable to Rule 803(2), but concluding that the circumstances surrounding a statement may be sufficient to establish the existence of a sufficiently startling event). Where the circumstances surrounding an excited utterance do not indicate that the startling event occurred, an excited utterance cannot be admitted as an exception to the hearsay rule. *See Keys*, 814 A.2d at 1259.

Father claims that the trial court erred in admitting A.S.'s reports that M. inappropriately touched her as substantive evidence that M.C. abused A.S. He asserts that the trial court lacked a proper foundation to admit the reports as excited utterances because no independent evidence corroborated that a

startling event occurred.[8]   He further claims that there was no basis to

determine how much time elapsed between the alleged touching and A.S.'s

_____

[8] The concurring and dissenting memorandum asserts, in part, that Father waived his challenge to the trial court's determination that A.S.'s reports constituted excited utterances.  The unconventional procedures followed in this case makes this analysis problematic.

Here, the parties and the trial court all recognized that A.S.'s reports, to be admitted for the truth of the matters asserted therein, constituted hearsay that must satisfy an exception.  The concurring and dissenting memorandum does not mention that Father's motion *in limine* and pre-trial arguments stated objections to "hearsay," as well as Mother's intended offer under the Tender Years Act.  **Compare** Motion *in Limine*, 8/15/22, at 2; N.T., 8/15/22, at 8, **with** Concurring and Dissenting Memorandum at 3-4.  While Father's further arguments regarding taint and the need for a pretrial hearing were muddled, there is no doubt that Father stated hearsay objections before the admission of the challenged evidence as required by Pa.R.E. 103(a)(1).  **See** N.T., 8/15/22, at 33, 53.  In response to Father's hearsay and other objections, the trial court repeatedly reserved ruling until it examined A.S. *in camera*.  **See id**. at 11, 33, 53, and despite referring to the **possible** application of the exited utterance exception, **see id**. at 32, the court did not ask or require Mother, as the proponent of the evidence, to lay a proper foundation.  Under these circumstances Father's decision not to object a fifth time to hearsay when Mother testified, but before the trial court examined A.S. was reasonable under the circumstances.

To the extent the concurring and dissenting memorandum also criticizes Father for not specifying the basis of his hearsay objections, **see** Concurring and Dissenting Memorandum at 3 (noting that Father objected to hearsay but did not cite any specific grounds), that criticism is misplaced.  It is the **proponent** of hearsay evidence who must establish that an exception applies to admit an out-of-court statement for the truth of the matter asserted.  **See Adams v. Rising Sun Med. Ctr.**, 257 A.3d 26, 36 (Pa. Super. 2020).

Here, Mother was the proponent of the evidence, and she bore the burden of establishing that a valid hearsay exception applied.  The record here shows Mother relied solely on the Tender Years Act to admit testimony concerning A.S.'s statements.  It was the trial court that *sua sponte* raised and then decided the evidentiary issue.  The trial court, not Mother, first suggested that
*(Footnote Continued Next Page)*

reports, or whether A.S. had an opportunity to deliberate or talk to others before making the reports. Father concludes that A.S.'s reports lacked any indicia of reliability to admit them for the truth of the matter asserted and that Mother's, Paternal Aunt's, and Paternal Grandmother's testimony about her reports were equally unreliable due to their biases against him. Father continues that the improper admission of A.S.'s reports prejudiced the trial court's decision to impose safety conditions on Father's custodial time and the court's findings that several section 5328 factors favored Mother. **_See_** Father's Brief at 41-43.

_____

A.S.'s reports might be considered for the truth of the matters asserted under the excited utterance exception. **_See id_**. at 32. At no point during the hearing did Mother argue that the A.S.'s reports constituted "excited utterances," or did the trial court require Mother to lay a proper foundation. It was only at the close of the testimony that the trial court, not Mother, who propounded that the evidence of A.S.'s reports were admissible as excited utterances without further discussion of the foundations for its ruling. The concurring and dissenting memorandum thus minimizes the unusual procedure wherein the trial court, not Mother, acted as the actual proponent of the evidence.

Lastly, although it would have been better practice for Father's counsel to respectfully note an objection to the trial court's own suggestions and specific ruling that A.S.'s reports were excited utterances, because counsel preserved his objections that A.S.'s reports were hearsay if considered for the truth of the matter asserted, he is entitled to a review of his claim. **_See_** Pa.R.E. 103(a)(1); **_cf. Commonwealth v. Mitchell_**, 902 A.2d 430, 456 n.18 (Pa. 2006) (declining to find waiver of a challenge to the admission of evidence under the state-of-mind exception to hearsay where the defendant's counsel raised a standing hearsay objection at the beginning of a witness's testimony regarding a victim's diary entries but later objected on other grounds, _i.e._, the basis that the evidence was not contemporaneously recorded or was too remote).

- 13 -

The trial court reasoned that A.S.'s reports had sufficient indicia of reliability because they were spontaneous, unsolicited, and consistent, noting that, on two occasions, A.S. reported the inappropriate touching as Mother and Paternal Grandmother washed A.S.'s private areas. *See* Trial Court Opinion, 10/19/22, at 10-12. The trial court emphasized that Father's own sister and mother, Paternal Aunt and Paternal Grandmother, testified about A.S.'s reports. *See id*. at 11. The trial court continued that even if A.S.'s reports were not excited utterances, her reports were,

> not used in any way against the alleged perpetrator. It was absolutely necessary for this court to be aware of the prior allegation in order to craft an order that was in the best interest of [A.S.]. What most concerned this court was not necessarily the veracity of the statement but rather that the statement was in fact made by [A.S.] and that Father categorically refused to believe his daughter.

*Id*. at 13.

Following our review, we conclude that the trial court erred in admitting A.S.'s reports that M. inappropriately touched her as excited utterances. Mother, as the proponent of A.S.'s reports for the truth of the matter asserted, did not establish a foundation to determine whether the startling event occurred, how much time elapsed between the event and A.S.'s disclosure, or whether A.S. had talked to, or had an opportunity to talk to, others before making her initial report to Mother, nor did the trial court discuss these factors

when ruling *sua sponte* that A.S.'s reports constituted excited utterances.[9]

***See Keys***, 814 A.2d at 1259. ***Keys*** provided that, without an appropriate direct or circumstantial foundation in the record, a proffered excited utterance alone cannot be admitted to establish that the exciting event actually occurred. ***See id***. In the absence of any information regarding the timing of this event in relation to A.S.'s report to Paternal Aunt, Paternal Grandmother,

---

[9] Nothing in the record shows when A.S. made the reports in relation to the last time M.C., or any other person named M., would have had an opportunity to have contact with A.S. Paternal Aunt suspected M.C. based on her unease with the fact that M.C., who was six-feet tall and weighed over 200 pounds, would fall asleep in the same bed as C.M. and Father. ***See*** N.T., 8/15/22, at 45.

Given the absence of an appropriate proffer by Mother or any additional record evidence of a foundation to consider A.S.'s reports as excited utterances, the concurring and dissenting memorandum's reliance on ***McEachin*** and ***Commonwealth v. Bibbs***, 970 A.2d 440 (Pa. Super. 2009), to conclude that the trial court appropriately considered Paternal Aunt's, Paternal Grandmother's, and Mother's testimony about A.S.'s reports for the truth of the matters asserted is unpersuasive. In both ***Bibbs*** and ***McEachin***, there was sufficient evidence actually put on the record that supported the admission of the excited utterances, namely, that an exciting event occurred, the alleged perpetrator recently had access to the victim, and the victim, even if a child, reported the abuse within a reasonable time. ***See Bibbs***, 970 A.2d at 454 (holding that an adult shooting victim's report to a responding officer that "Bill" shot him was an excited utterance where there was no evidence that people who already spoke to the victim impacted the victim's statement, the police officer to whom the statement was made responded within minutes of a dispatch, and the victim was sitting on a sidewalk bleeding from an apparent gunshot wound); ***McEachin***, 537 A.2d at 890 (noting the relaxed standard of spontaneity for child-victims of sexual assault and concluding that among other circumstances that a five-year-old victim's report to his mother that a school employee molested him occurred approximately two-and-one-half hours after the child returned from school and the child's parent observed he was behaving strangely). Here, as noted above, there was no proffer or foundation for admitting A.S.'s reports as excited utterances.

and Mother, we are constrained to conclude that the trial court abused its discretion in admitting A.S.'s reports for their truth under the excited utterance exception.

Nevertheless, the trial court also reasoned that it did not use the evidence to determine that abuse occurred or that M.C. perpetrated the abuse. *See* Trial Court Opinion, 10/19/22, at 13. Instead, the trial court focused on Father's responses to A.S.'s report. *See id*. Because an evidentiary ruling must be erroneous **and** prejudicial to merit appellate relief, *see A.J.B.*, 945 A.2d at 751, we will continue to examine Father's claims of reversible error in the context of his challenges to the trial court's restriction on his partial physical custody and award of primary custody to Mother.

In his second issue, Father asserts that the trial court abused its discretion by requiring Father to exclude M.C. from his custodial times. A trial court may impose restrictions on child custody awards based on the agreement of the parties or upon a request from one of the parties. ***See Fatemi v. Fatemi***, 489 A.2d 798, 801-02 (Pa. Super. 1985); ***see also Ferencak v. Moore***, 445 A.2d 1282, 1286-87 (Pa. Super. 1982). When a party moves for a restriction, that party must show that without the restriction, custody with the other parent will have a detrimental impact on the child. ***See J.R.M. v. J.E.A.***, 33 A.3d 647, 653 (Pa. Super. 2011). "Once a court concludes that the imposition of a restriction is necessary, it must phrase the restriction in the least intrusive language reasonably needed to safeguard the child. Broad or nonspecific restrictions will be invalidated in

- 16 -

favor of narrowly focused, precise restrictions that are directed toward the child's welfare." ***Fatemi***, 489 A.2d at 801-02 (Pa. Super. 1985) (internal citations omitted).

Additionally, the trial court may impose safety conditions pursuant to section 5323(e), which provides:

> [I]f the court finds that there is an ongoing risk of harm to the child or an abused party and awards any form of custody to a party who committed the abuse or who has a household member who committed the abuse, the court shall include in the custody order safety conditions designed to protect the child or the abused party.

23 Pa.C.S.A. § 5323(e).

Father claims that the trial court erred or abused its discretion when it imposed safety conditions pursuant to section 5323(e) without finding abuse or an ongoing risk of harm to A.S. Father asserts that without A.S.'s hearsay reports that M. inappropriately touched her, no evidence established an ongoing risk of harm to A.S. in his household. Additionally, Father contends that M.C. is not the only possible perpetrator because A.S. only reported that M. had touched her, and A.S. has a cousin also named M. Father concludes that the trial court's imposition of safety conditions on his custodial time was unreasonable because it impairs his ability to foster a relationship with A.S. while he resides with C.M. and M.C and attempts to create a family-like unit. ***Id.*** at 46.

The trial court addressed Father's issue and noted that a finding of ongoing risk of harm was not required when excluding a third party in the best

- 17 -

interests of a child. *See* Trial Court Opinion, 10/19/22, at 9. The trial court explained that it was "very concerned that Father did not take the appropriate actions regarding [A.S.] and [M.C.]." *Id*. The trial court concluded that it "crafted" an order "to ensure that the subject child would not be in the presence of the older child with whom she shared no biological connection and who was not a party to this case." *Id*.

Following our review, we conclude that the admission of A.S.'s reports for the truth of the matter asserted as excited utterances prejudiced the trial court's decision to impose the restriction on Father's partial custody of A.S. Although the trial court did not refer to section 5323(e), we note that a safety condition pursuant to that section would be improper because the only evidence of abuse or an ongoing risk to A.S.'s safety was A.S.'s hearsay reports that M. inappropriately touched A.S. on her vagina or buttock. As discussed above, Mother did not establish a foundation for the admission of A.S.'s reports for the truth of the matters asserted. Further, A.S. did not specifically identify M.C. as the perpetrator, and our review reveals no other competent evidence in the record to support a finding that A.S. had identified M.C. as the perpetrator.

To the extent the trial court imposed a restriction to ensure Father takes reasonable measures to address A.S.'s reports and safeguard her welfare, we appreciate the trial court's concerns and agree that it is in A.S.'s best interest that Father believe A.S.'s reports until there is a reasoned and factual basis to conclude that A.S.'s reports did not involve M.C. However, nothing in the

current record establishes a basis for the trial court to determine whether M.C. bore responsibility for A.S.'s report or engaged in conduct amounting to inappropriate touching or abuse of A.S. Indeed, when Mother argued for a restriction on Father's custodial time, she requested that M.C. not be in the presence of A.S. "until more is understood about what happened and what's going on[, o]r at least until A.S. has had some degree of therapy to find out what's happening with her." N.T., 8/15/22, at 314.

Thus, the trial court's exclusion of M.C. was overbroad in light of the competent evidence of record. *See J.R.M.*, 33 A.3d at 653 (vacating restrictions when the trial court's findings did not support the court's restrictions on periods of partial custody); *Fatemi*, 489 A.2d at 802 (vacating a prohibition that a mother not have male companions present when exercising physical custody where the father only offered vague allegations that mother's relationships caused her to neglect a child). The exclusion of M.C. does not allow for Father to take appropriate steps to address A.S.'s reports of abuse or allow additional supervised or therapeutic contacts to determine whether abuse occurred in Father's household. Moreover, the trial court did not provide a mechanism for Father to lift the restriction if M.C. did not abuse A.S. or engage in other improper conduct that caused A.S.'s reports.

For these reasons, we vacate the restriction completely excluding M.C. during Father's custodial time and remand this matter to the trial court for further consideration of whether such restrictions are necessary, and if so, to fashion a narrowly focused and more precise restriction "using the least

intrusive language reasonably needed to safeguard" A.S. ***Fatemi***, 489 A.2d at 801. The trial court, upon remand, may hold any additional hearings or receive additional evidence it deems necessary to render a proper decision on the necessity, scope, or duration of a restriction upon Father's periods of physical custody of A.S. The parties, similarly, are free to present the trial court with any agreement they reach as to reasonable restrictions on Father's periods of custody. ***See id***. (noting that the trial court may impose restrictions based on the agreement of the parties).

In his third issue, Father contends that the trial court erred in its analysis of A.S.'s best interests. It is well settled that the primary concern in any custody case is the best interests of the child. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (internal citation omitted).

Section 5328(a) enumerates the custody factors a trial court must consider when assessing a child's best interests, and the trial court must consider "**[a]ll** of the factors listed in section 5328(a) . . .." ***J.R.M.***, 33 A.3d at 652 (emphasis in original). Section 5328(a) states:

> **(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

We have further explained:

Section 5323(d) provides that a trial court shall delineate the reasons for its decision on the record in open court or in a written opinion or order. Additionally, section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal.

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with [s]ection 5323(d).

*A.V.*, 87 A.3d at 822-23 (internal citations and quotations omitted).

Father asserts that the trial court ignored uncontradicted evidence that Mother: (1) blocked his attempts to communicate with her and A.S.; (2) assaulted him, physically threatened him with a knife and damaged his personal property while A.S. was in his home, (3) unilaterally made medical appointments for A.S., (4) did not tell Father when A.S. was sick or taking

medication, and (5) withheld documents necessary for him to schedule appointments for her. Father also argues that the trial court improperly denied him the opportunity to present evidence concerning Mother's mental health conditions. Father concludes that the trial court's errors affected its determinations under sections 5328(a)(1), (2), (9), (10), (13), and (15).

Initially, we conclude that Father has not preserved his contention that the trial court erred in prohibiting him from testifying about Mother's mental health conditions. Father's counsel, during opening arguments, stated that Father intended to present evidence that Mother was bipolar and had mental health issues. *See* N.T., 8/15/22, at 23-24. The trial court precluded such evidence noting that neither party had complied with the trial court's order to undergo psychological or custody evaluations. *See id*. at 24. Rather than offering proof to establish that Father had any admissible evidence concerning Mother's mental health diagnosis or condition, Father's counsel responded, "Okay." *Id*. Therefore, Father has waived this issue for review.[10] *See* Pa.R.A.P. 302(a); Pa.R.E. 103(a)(2).

As to Father's assertions that the trial court abused its discretion when considering the section 5328(a) custody factors, the trial court concluded that it properly considered the evidence as to all factors and made appropriate credibility findings. *See* Trial Court Opinion, 10/19/22, at 15-16. As to section

_____

[10] Moreover, even if we were to conclude that Father preserved this issue, he proffered no basis to conclude that he had competent evidence or a proper foundation to offer evidence of a diagnosis or opine about Mother's mental health condition.

5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, *see* 23 Pa.C.S.A. § 5328(a)(1), the trial court found this factor favored Mother. Our review shows that the trial court credited Mother's testimony that she has been allowing A.S. to speak with Father and C.M. *See* N.T., 8/15/22, at 109, 319. Father acknowledged that Mother allows him to FaceTime with A.S., though he maintained that Mother would sometimes block his number. *See id*. at 198. Further, the trial court found credible Mother's testimony that during the time that Father withheld A.S. from Mother, from December 26, 2021, to January 20, 2022, Father demanded to record each conversation they had and withheld contact with A.S. unless Mother agreed to the recordings. *See id*. at 101, 105, 319. The trial court concluded Father's demand was "completely unacceptable." *Id*. at 319.

As to section 5328(a)(2), and (2.1), which pertain to present and past abuse and DHS's involvement, the trial court noted that DHS investigated A.S.'s reports of inappropriate touching and that Father has a pending PFA matter against Mother. *See id*. at 319. The court determined, however, that Father had only obtained an *ex parte* order, based on unproven allegations. *See id*. at 320. The court noted it considered the evidence that Mother abused Father, but it did not give that evidence "a lot of weight." *Id*.

Regarding section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with A.S., the trial court weighed Mother's responses to A.S.'s reports that M. had inappropriately

touched her against Father's failure to believe A.S., or take measures to find out whether the allegations were true. The trial court found significant that Father only talked to A.S., but there was no evidence that either he or C.M. talked to M.C., and that there was no evidence whether M.C. was even aware of "good touch, bad touch." *Id*. at 322.

Similarly, as to section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the trial court determined that Mother's responses to A.S.'s reports, namely, that she believed A.S. and took reasonable measures to protect A.S. weighed in favor of Mother and that Father's responses weighed against him. *See id*. at 323.

As to section 5328(a)(13), which relates to the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another, the trial court found that the parties are in a "high conflict situation" and that "the parties really need to learn how to communicate with each other." *Id*. The court noted that there is a high conflict situation between both parties, and it did not expressly find this factor to favor either party. *See id*.

Following our review, we conclude that Father's arguments center on the trial court's assessment of the credibility of the witnesses and how it weighed the evidence presented. Although Father would like this Court to reweigh the evidence in his favor, this Court has held that "with regard to issues of credibility and weight of the evidence, we must defer to the presiding

trial judge who viewed and assessed the witnesses first-hand." ***J.M.R. v. J.M.***, 1 A.3d 902, 911 (Pa. Super. 2010). Because there was support in the record for the trial court's findings of fact and credibility, we will not disturb the trial court's findings. ***See E.B.***, 209 A.3d at 468.

Lastly, we return to Father's first issue, namely, that the trial court's admission of A.S.'s hearsay reports prejudiced the trial court's consideration of the custody factors. We note that where a party offers an out-of-court statement to show its effect on a listener, it is not being offered for the truth of the matter asserted and, therefore, is not hearsay. ***See Commonwealth v. Fitzpatrick***, 255 A.3d 452, 458 (Pa. 2021) (noting that "[t]o constitute hearsay, a statement first must be uttered out-of-court, and then it must be offered in court for the truth of the matter asserted in the statement"); ***accord In re Adoption of S.-A.T.***, 272 A.3d 480, 2022 WL 152469 (Pa. Super. 2022) (unpublished memorandum at *5).[11] Accordingly, we will not find reversible error if the trial court considered the testimony concerning A.S.'s reports for a proper evidentiary purpose and did not improperly rely on the truth of the matter asserted when considering the custody factors. ***Cf. A.J.B.*** 945 A.2d at 751.

Having reviewed the entire record, the trial court's findings of fact and credibility at the hearing, the trial court's Rule 1925(a) opinion, and the parties' arguments, we conclude that no relief is due as it relates to the trial

---

[11] ***See*** Pa.R.A.P. 126 (permitting citation to unpublished memorandum of this Court filed after May 2019).

court's award of primary physical custody of A.S. to Mother. Even if the trial court erred in admitting A.S.'s reports for the truth of the matter asserted, the trial court, when granting Mother primary physical custody, appropriately limited its consideration of those reports to non-hearsay purposes, that is, the parties' reactions to the reports, and not the substantive allegation that M. inappropriately touched A.S. Thus, we find no error or prejudice affecting the trial court's award of primary custody to Mother and partial custody to Father. **See id**.

In sum, we conclude that the trial court erred in admitting A.S.'s reports of abuse as excited utterances and that error prejudiced the court's decision to exclude M.C. from Father's periods of physical custody. However, competent evidence supported the trial court's decision to award Mother primary physical custody and any error in the court's ruling A.S.'s reports of abuse constituted excited utterances did not prejudice the trial court's consideration of A.S.'s best interest pursuant to section 5328(a). As the trial court noted, its concern was "not necessarily the veracity of the statement but rather that the statement was in fact made by [A.S.] and that Father categorically refused to believe [her]," Trial Court Opinion, 10/19/22, at 13, and the court's specific findings of fact at the hearing demonstrate that it did not weigh A.S.'s reports for the truth of the matter asserted, but rather Father's disbelief of the reports. **See** N.T., 8/15/22, at 319-25. Thus, we affirm the order to the extent it awarded primary physical custody to Mother, but vacate its restriction to exclude M.C. from Father's periods of physical

custody and remand this matter for further proceedings consistent with this decision.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judge Bowes concurs in the result.

Judge McCaffery files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2023