J-S21037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GREGORY W. POTTER :
:
Appellant : No. 1848 EDA 2023

Appeal from the Judgment of Sentence Entered June 16, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004258-2022

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED SEPTEMBER 4, 2024**

Gregory W. Potter (Appellant) appeals from the judgment of sentence imposed following his non-jury convictions of one count each of possession of an instrument of crime (PIC), simple assault, and recklessly endangering another person (REAP).[1] Appellant challenges the trial court's evidentiary rulings. We affirm.

The trial court detailed the evidence presented at trial as follows:

> On April 28, 2022, at approximately 3:20 a.m., Philadelphia Police Officer[] George Marko's (hereinafter referred to as "Officer Marko") tour of duty took him to … 521 Emerson Street [(the house),] in the City and County of Philadelphia. (N.T., 6/16/23, pp. 11-12). At that time, Officer Marko was responding to a police radio call [that reported] a male [at the house who, the dispatcher relayed, was] armed with a gun and a metal object. *Id.* As Officer Marko … [parked his police vehicle] in front of … [the house,] a female named[] Tiffany Settle (hereafter referred to as the

---

[1] 18 Pa.C.S.A. §§ 907(a), 2701(a), 2705.

complainant) exited a vehicle that was in front of th[e] house[, approached Officer Marko and told him that she had placed the 911 call].[2] *Id.* at 13-16.

The complainant appeared to be crying. She had a lump over her right eye. She was speaking very excitedly, waved her hands a lot as she spoke and[, according to Officer Marko,] "she could not compose herself long enough to get her story out…." *Id.* at 14, 22. The complainant initially started explaining how she had been in [a domestic] incident with the Appellant. *Id.* at 14. The complainant stated that she had been [at the house], and the Appellant

> came home, and he was "drunk as shit" and started his shit. They got into an argument and eventually the [Appellant] allegedly threw a box fan and … a shoe rack down the hallway. That's when it became physical[,] where he grabbed the complainant and pushed her towards another bedroom and down the hallway into the living room.

*Id.* at 15. The complainant also stated that during the physical altercation[,] … Appellant struck her with a metal door stopper at least once.[3] *Id.* at 16.

Officer Marko was not able to get clarification as to whether the complainant had actually seen the Appellant with a gun until he was able to get the complainant to calm down. It was only at that time that Officer Marko was able to determine from the complainant that she had never actually seen the Appellant with a gun[; the complainant] … "just told the [police] dispatcher … that Appellant [']had a license to carry.[']" *Id.* at 22-24.

Officer Marko stated that his "first priority" was to get clarification on what the gun situation was. *Id.* at 24. After Officer Marko determined that … no gun [was involved], the

---

[2] The complainant resided at the house with Appellant. *See* N.T., 6/16/23, at 13-14, 18, 24. Notably, the complainant did not testify at trial.

[3] Officer Marko described the door stopper as a four-foot-long metal pole that, he estimated, weighed three to four pounds. N.T., 6/16/23, at 16-18.

complainant allowed Officer Marko and a back-up officer into the … [house].  ***Id.*** at [18,] 24-25.

Officer Marko and the back-up officer walked into the house and the Appellant was sleeping on the couch.  ***Id.*** at 18.  Officer Marko shook the Appellant "a couple of times" to wake him up so he could talk to him, and the Appellant jumped up real[ly] quick, surprised, and asked "[']what the fuck' was Officer Marko doing there."  ***Id.***  When the Appellant woke up and saw the police officers[,] "he calmed down and followed directions from then on."[4]  ***Id.***

Trial Court Opinion, 10/27/23, at 3-5 (footnotes added; formatting, citations, and some capitalization modified; brackets in original omitted).[5]

The Commonwealth subsequently charged Appellant with PIC, REAP and simple assault, as well as aggravated assault.[6]  On May 2, 2023, Appellant filed a motion *in limine* to preclude evidence of the complainant's statements to Officer Marko.  Appellant claimed (1) the complainant's statements did not meet any exception to the rule against hearsay; and (2) their admission into evidence would violate Appellant's constitutional right to confrontation "in the event that the complainant does not testify."  Motion *in Limine*, 6/16/23, at 1-2, 3.  With respect to confrontation, Appellant pointed out that

---

[4] Officer Marko additionally testified that when he informed Appellant that the police "were called for a domestic incident, [Appellant] had stated to the [] complainant, ['W]hy the fuck did you call the cops again?[']"  N.T., 6/16/23, at 19.

[5] At trial, the trial court permitted the Commonwealth to introduce evidence of the victim's injuries and hospital records.  The records reflected that the victim was admitted to the hospital on Friday, April 29, 2022, and remained hospitalized for three days.  ***See*** Commonwealth Exhibit C-3.

[6] 18 Pa.C.S.A. § 2702(a)(4).

[t]he Supreme Court of the United States ruled in **_Crawford v. Washington_**[, 541 U.S. 36 (2004)] that, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation. … [**_Id._** at] 69….

Motion _in Limine_, 6/16/23, at 3.

The trial court held a hearing on Appellant's motion _in limine_ on May 5, 2023, and considered argument from the parties. The court denied the motion on June 16, 2023. The matter immediately proceeded to a stipulated non-jury trial, where Officer Marko was the only witness. As stated above, Officer Marko testified with respect to the complainant's statements, over Appellant's renewed objection. **_See_** N.T., 6/16/23, at 14-17; **_see also id._** at 14 (defense counsel's objection).

At the close of trial, the trial court convicted Appellant of simple assault, PIC and REAP, and acquitted him of aggravated assault. On June 16, 2023, the trial court sentenced Appellant to 18 months of probation. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for review:

1. Did not the trial court err and abuse its discretion by improperly allowing the introduction of a hearsay statement of the complainant into evidence as an excited utterance, where such statement did not meet the requirements of an excited utterance?

2. Did not the trial court err as a matter of law, abuse its discretion and deny [A]ppellant his federal and state constitutional rights to due process and confrontation, where the admission of the complainant's hearsay statement denied

[A]ppellant his fundamental right to cross-examine and confront an accuser against him?

Appellant's Brief at 4.

Appellant first claims the trial court abused its discretion in denying his motion *in limine*, and permitting the Commonwealth to introduce at trial the complainant's inadmissible hearsay statements. *See id.* at 13-20. Appellant claims the trial court incorrectly determined that the complainant's statements satisfied the "excited utterance" exception to the rule against hearsay. *Id.* at 13. According to Appellant, the trial court's

[a]llowance of this evidence was an abuse of discretion as the statements made were not spontaneous responses to the excitement of a startling event, but were contemplated responses made after reflection.

*Id.*; *see also id.* at 16 (claiming the complainant "had had significant time to reflect on what she was going to say before Officer Marko ever arrived on the scene.").

Appellant maintains "there was no evidence presented about how much time elapsed between the alleged startling event and the arrival of the police, but unquestionably, significant time passed." *Id.* at 18. He argues,

[a]fter the alleged incident occurred, the complainant got in her car, drove to her mother's house, and drove back to the scene. Regardless of how long this took, this period of time, alone in her car, was certainly time for reflection, and indeed, planning.

*Id.* Appellant further contends, "[t]he fact that a person is crying, or excited or upset is not the lynchpin, as the trial court seemed to believe…." *Id.* at 15.

Appellant maintains this case is analogous to *Commonwealth v. Keys*, 814 A.2d 1256 (Pa. Super. 2003). *See* Appellant's Brief at 16-17. In *Keys*, the defendant's wife (Wife) placed a 911 call and reported that, on the previous day, the defendant (1) placed a sword against her throat and threatened to cut her throat; and (2) held her overnight at the couple's residence, against Wife's will. *Keys*, 814 A.2d at 1257. Police responded and questioned Wife, several blocks away from her residence. *Id.* According to the responding officer, Wife was "distraught and erratic"; "visibly upset and angry"; and recounted what had happened the previous day, "[i]n response to the officer's query…." *Id.* The matter proceeded to a non-jury trial; Wife did not testify. *Id.* The defendant's counsel objected to police testimony about Wife's out-of-court statements, arguing the statements constituted inadmissible hearsay not subject to any exception. *Id.* The trial court overruled the objection, determining that Wife's statements were admissible under the excited utterance exception. *Id.* Notably, the police testimony relaying Wife's statements was "the **sole evidence** offered against [the defendant]." *Id.* (emphasis added).

The trial court in *Keys* convicted the defendant of terroristic threats, after which he appealed and challenged the trial court's evidentiary ruling. *Id.* This Court reversed. *Id.* at 1258-59 (concluding "the statements of [] [W]ife do not qualify as an excited utterance and the trial court abused its discretion by ruling otherwise."). We emphasized, "no independent evidence was

presented substantiating the alleged incident." *Id.* at 1259.  The *Keys* Court

cited prior court cases holding that, "[w]here there is no independent evidence

that a startling event has occurred, an alleged excited utterance cannot be

admitted as an exception to the hearsay rule." *Id.* (quoting *Commonwealth*

*v. Barnes*, 456 A.2d 1037, 1040 (Pa. Super. 1983)).  We further observed

that Wife's "utterance is a narrative of overnight events, not a single reaction

to a single startling episode." *Id.*  Moreover, Wife made her statements in

response to police questioning, while located a significant distance away from

her and the defendant's residence. *Id.*

> Instantly, according to Appellant,
>
> like the [victim] in *Keys*, the fact that the complainant was
> "excited" and upset did not render her statements excited
> utterances.  Rather, when looking at the other factors in this case,
> the complainant's statements do not have the necessary reliability
> to render them excited utterances within the meaning of the
> exception, as they were … "not a single reaction to a single
> startling episode." [*Keys*, 814 A.2d] at 1259.

Appellant's Brief at 17.

The Commonwealth counters the trial court correctly determined the

complainant's statements were admissible under the excited utterance

exception. *See* Commonwealth Brief at 6-12.  The Commonwealth contends

the statements "fell squarely within the excited utterance exception[,] …

because they were made while [the complainant] was still under the shock

and excitement of the physical assault." *Id.* at 6.  According to the

Commonwealth,

the evidence demonstrated that [the complainant] was still in a state of shock and excitement at the time she made the statements to Officer Marko. He testified that she was crying, shouting, pacing back and forth, waving her hands, breathing rapidly, and talking over herself. He stated that when he attempted to calm her down, she would become excited again as soon as she resumed talking. Moreover, Officer Marko could observe a large, fresh, and still-developing knot and bruise above [the complainant's] eye.

*Id.* at 9; *see also id.* at 10 (arguing the complainant's "frantic demeanor, and the still-developing nature of the knot and bruise over her right eye, supported a finding that the assault was recent.").

We are mindful of our standard of review:

When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted).

"Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); *see also* Pa.R.E. 802 (hearsay rule). "Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in

- 8 -

evidence to prove the truth of the matter asserted." ***Commonwealth v. Fitzpatrick***, 255 A.3d 452, 471 (Pa. 2021) (citing Pa.R.E. 801(c)(1)-(2)) (ellipses and quotation marks omitted).

The Rules of Evidence provide certain exceptions to the general rule against hearsay, including the excited utterance exception. Pa.R.E. 803(2). An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." ***Id.*** The comment to Rule 803(2) states that to be deemed an excited utterance, a statement

> need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance.

Pa.R.E. 803(2), Comment.

> To qualify as an excited utterance, a statement must be a
>
> spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. **Thus, it must be shown first, that the declarant had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.**

***Commonwealth v. Manley***, 985 A.2d 256, 265 (Pa. Super. 2009) (emphasis added; citations, ellipses and brackets omitted); ***see also Commonwealth***

*v. Zukauskas*, 462 A.2d 236, 237 (Pa. 1983) (describing an excited utterance as "the event speaking and not the speaker.").

The *Manley* Court further explained that

[i]n determining whether a statement is an excited utterance and, thus, admissible …, there is no bright line rule as to the amount of time which has elapsed between the incident and the witness' statement. Rather the crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

*Manley*, 985 A.2d at 265 (citation omitted).

This Court in *Keys* provided the following guidance:

In determining whether a statement is an excited utterance, we have considered the following:

1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. Rather, **the factors are to be considered in all the surrounding circumstances** to determine whether a statement is an excited utterance.

*Keys*, 814 A.2d at 1258 (emphasis added; original emphasis and quotation marks omitted). Finally, "a statement, which otherwise qualifies as an excited utterance, is not precluded from falling within the excited utterance exception to the hearsay rule when made in response to questioning." *Commonwealth*

*v. Jones*, 912 A.2d 268, 282-83 (Pa. 2006) (citing, *inter alia*,

*Commonwealth v. Banks*, 311 A.2d 576, 580 (Pa. 1973)).

Instantly, the trial court determined it properly admitted the

complainant's hearsay statements into evidence under the excited utterance

exception, competently reasoning as follows:

> Officer Marko testified that the complainant made the following statements:
>
> > She stated that she had been home, and [Appellant] came home, and he was "drunk as shit" and started his shit. They got into an argument and eventually[, Appellant] allegedly threw a box fan and … a shoe rack down the hallway. That's when it became physical[,] where he grabbed [the complainant] and pushed her towards another bedroom and down the hallway into the living room.
>
> (N.T., 6/16/23, p. 15).
>
> When he was asked whether the complainant describe[d] anything else[,] Officer Marko[] testified as follows: "She said during the physical altercation that [Appellant] struck her with a metal door stopper at least once." *Id.* at 16. **The statements in question were made to Officer Marko in response to and within the moments following a traumatic event: namely, a physical altercation where the Appellant struck the complainant with a metal door stopper**. *Id.* At that time, Officer Marko described the complainant as "appear[ing] to be crying," "had a lump over her right eye," [she was] "speaking very excitedly," waiving "her hands a lot," and "getting ahead of herself as she spoke." *Id.* at 14. Officer Marko further described the complainant's demeanor as not being able to compose herself enough to get her story out without having to give her breaks to calm down, and as soon as she started speaking again, she would get excited again. *Id.* at 23-24.
>
> It is apparent from the testimony of Officer Marko that the complainant made the aforesaid statements under the stress of experiencing the traumatic event of the physical altercation[,]

- 11 -

where she was struck on the head with a metal door stopper. As such[,] these statements fall squarely within the excited utterance exception to the rule against hearsay.

Trial Court Opinion, 10/27/23, at 6-7 (emphasis added; formatting, citations, and some capitalization modified). Our review discloses the trial court's reasoning is supported by the law and the record, and we agree with its conclusion.

Moreover, we determine that **Keys**, *supra*, is inapposite and unavailing. As stated above, in **Keys**, "no independent evidence was presented substantiating the alleged incident." **Keys**, 814 A.2d at 1259. Here, the Commonwealth presented evidence that the complainant sustained significant injuries when Appellant bludgeoned her with a heavy metal object, which resulted in her being hospitalized for three days. **See** N.T., 6/16/23, at 15-16; Commonwealth Exhibit C-3. Further, Officer Marko testified that the visible injury above the complainant's right eye was continuing to develop, while she frantically described Appellant's assault to him. **Id.** at 19 (Officer Marko testifying the large "lump" above the complainant's eye "was startin[g] to turn black and blue"). Finally, unlike in **Keys**, the complainant gave her statement to Officer Marko directly in front of the house, where the assault had occurred and where Appellant was located. **Id.** at 12-13. **Cf. Keys**, 814 A.2d at 1257 (observing the purported domestic incident occurred ten blocks away from where the victim gave her police statement).

Based on the foregoing, the trial court properly exercised its discretion in admitting the complainant's statements under the excited utterance exception. Appellant's first issue merits no relief.

In his second issue, Appellant argues that, even if the complainant's statements met the requirements of the excited utterance exception, the trial court erred in admitting this evidence, as it violated his right to confrontation pursuant to **Crawford**, *supra*. **See** Appellant's Brief at 21-25. Appellant claims the complainant's statements to Officer Marko were "testimonial" in nature, and therefore inadmissible at trial, as Appellant never had the opportunity to cross-examine the complainant. **Id.** According to Appellant, "the function of the statements … about [the complainant's] alleged domestic assault were clearly to prove past events potentially relevant to later criminal prosecution." **Id.** at 24. Appellant maintains that "[o]nce [the complainant] told Officer Marko that there was no gun involved in the incident, … there no longer was an ongoing emergency." **Id.** Therefore, Appellant claims, the complainant's statements "were not made for the purposes of obtaining aid or assistance." **Id.** at 25.

The Commonwealth counters the trial court correctly found the complainant's statements were non-testimonial in nature, and therefore did not implicate the Confrontation Clause or **Crawford**. **See** Commonwealth Brief at 13-17. The Commonwealth claims "the trial court properly determined that [the complainant's] statements concerning the assault were made while

- 13 -

Officer Marko was acting to respond to an actual or perceived emergency."

*Id.* at 15. According to the Commonwealth, Officer Marko testified that (1) when he arrived at the house, he immediately saw that the complainant had been "visibly beaten[,] with a significant facial injury"; (2) the complainant "was in a clear state of distress"; and (3) although Officer Marko "asked [the complainant] what was occurring[,] … her statements were otherwise entirely unsolicited." *Id.* at 15, 16.

> The Commonwealth additionally argues that
>
> [s]ignificant here is how Officer Marko characterized his interaction with [the complainant] at … [trial]. Officer Marko testified that when he first encountered the victim, he asked her what **was** happening—not what had happened (N.T. 6/16/23[, at] 7); *see also Davis v. Washington*, 547 U.S. 813, 827 (2006) (statements were not testimonial where 911 operator's questions were to resolve present emergency rather than to simply learn what happened in the past).

*Id.* at 17 (emphasis in original). According to the Commonwealth, the evidence reveals that Officer Marko's "primary purpose" was

> determining whether and to what extent the injured [complainant] (or anyone else) was in need of urgent aid or assistance or otherwise in danger, and whether and to what extent the person who caused her injuries would likely be armed and dangerous to the officers or to others.

*Id.*

Whether Appellant's rights under the Confrontation Clause were violated by the admission of the complainant's statements is a question of law, for which our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Brown***, 185 A.3d 316, 324 (Pa. 2018) (plurality).  The

Pennsylvania Supreme Court has explained:

> The Confrontation Clause of the Sixth Amendment, made applicable to the States via the Fourteenth Amendment, provides that "in all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him…."  In ***Crawford***, 541 U.S. at 51, the Court held that the Sixth Amendment guarantees a defendant's right to confront those "who bear testimony" against him, and defined "testimony" as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact."  The Confrontation Clause, the High Court explained, prohibits out-of-court **testimonial statements** by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.

***Commonwealth v. Yohe***, 79 A.3d 520, 530-31 (Pa. 2013) (footnotes and

some citations omitted; emphasis added).  "[N]on-testimonial statements do

not implicate Confrontation Clause concerns."  ***Commonwealth v. Banko***,

268 A.3d 484, 487 (Pa. Super. 2022) (footnote omitted).

The ***Yohe*** Court explained that courts apply a "primary purpose" test to

determine whether statements are testimonial or non-testimonial in nature:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

***Yohe***, 79 A.3d at 531 (footnote omitted) (quoting ***Davis***, 547 U.S. at 822).

The Pennsylvania Supreme Court has further explained,

> [i]n making the determination as to the primary purpose of an interrogation, a court first should determine whether the

- 15 -

interrogation occurred during the existence of an ongoing emergency, or what was perceived to be an ongoing emergency. Although the existence—actual or perceived—of an ongoing emergency is one of the most important factors, this factor is not dispositive because there may be other circumstances, outside of an ongoing emergency, where a statement is obtained for a purpose other than for later use in criminal proceedings. In determining the primary purpose of an interrogation, a court must also objectively evaluate the circumstances surrounding the interrogation, including the formality and location, and the statements and actions of both the interrogator and the declarant.

*Commonwealth v. Allshouse*, 36 A.3d 163, 175-76 (Pa. 2012).

In *Michigan v. Bryant*, 562 U.S. 344 (2011), the United States Supreme Court stated:

An objective analysis of the circumstances of an encounter and the statements and actions of the parties to it provides the most accurate assessment of the "primary purpose of the interrogation." The circumstances in which an encounter occurs -- *e.g.*, at or near the scene of the crime versus at a police station, during an ongoing emergency or afterwards -- are clearly matters of objective fact. **The statements and actions of the parties must also be objectively evaluated**. That is, the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.

*Id.* at 360 (footnote omitted; emphasis added).

Here, the trial court determined that evidence of the complainant's statements did not violate Appellant's right to confrontation, as the statements were non-testimonial in nature:

In applying a "primary purpose determination" to the circumstances of this case, it is this [] court's determination that the [complainant's] statements[,] and the [police] encounter at issue[, were intended] to enable Officer Marko [] to meet an

ongoing emergency of responding to a domestic incident radio call of a male [at the house, who purportedly was] armed with a gun and a metal object. (N.T., 6/16/23, pp. 9-10). It was in that context that Officer Marko arrived … at the … [house] and encountered the complainant. The complainant immediately approached Officer Marko and began to "excitedly" tell Officer Marko that "she had been in an incident with the Appellant in which[,] *inter alia*[,] he "struck her with a metal door stopper." *Id.* at 9-10.

Officer Marko stated that [the] complainant's demeanor was such that "she appeared to be crying," "was kind of excited[,]" and that "she could not compose herself long enough to get her story out…[.]" *Id.* at 22. Officer Marko stated that his "first priority" was to get clarification on[ ]what the gun situation was[; however, Officer Marko] … was not able to get clarification on the gun situation from the complainant until he was able to get her to calm down. *Id.* at 22-24. After the complainant calmed down[,] Officer Marko was able to ascertain that she had never actually seen the Appellant with a gun, but [rather,] that [the complainant] "just told the dispatcher … that the Appellant [']had a license to carry.[']" *Id.* at 24-25.

For the foregoing reasons, this [] court contends that Appellant's reliance on ***Crawford*** …[,] under the factual circumstances of this case[,] is substantively misplaced given the context in which the statements at issue occurred. It is evident that **the "primary purpose" of Officer**[] **Marko's initial encounter with the complainant was to enable him** [**to provide**] **assistance as part of an ongoing emergency**[,] **in which he was responding to a** [**911**] **call of a male armed with a gun and a metal object.** As such, [**the complainant's statements at issue**] **do not qualify as testimonial**[. R]ather[,] they fall squarely into the category of statements that are deemed "non-testimonial hearsay" under the U.S. Supreme Court's holding in … ***Bryant***, [*supra*].

Trial Court Opinion, 10/27/23, at 11-12 (emphasis added; citations and some capitalization modified). We agree.

We further find the United States Supreme Court's decision in ***Davis*** instructive. This Court has analyzed ***Davis*** as follows:

- 17 -

> In *Davis*, a victim called 911 to report an ongoing domestic disturbance. When the victim reported that her assailant had fled the premises, the operator instructed the victim to stay on the line and answer questions until police arrived. *See Davis* …, *supra* at 818. A couple of minutes later, the police found the victim "shaken" and "frantic." *Id.* The victim did not testify at trial, but the trial court admitted the recording into evidence over the defendant's Confrontation Clause objection. *Id.* at 819. On appeal, the United States Supreme Court confirmed that the Confrontation Clause applied only to testimonial statements and considered whether the 911 call at issue contained any such utterances. Focusing on the circumstances of the 911 call, the Court found that the operator's primary purpose, while interrogating the victim, was to enable police assistance to address "a *bona fide* physical threat." *Id.* at 827. Specifically, the Court noted that the caller was speaking about events as they were happening, the nature of the questions that were asked and answered were targeted at resolving the present emergency, and the informality of the conversation indicated that the victim remained in a potentially unsafe environment. *Id.* Based on its review, the Court concluded that the call did not contain testimonial statements, and thus, its admission did not violate the Confrontation Clause.

*Commonwealth v. Fitzgerald*, 284 A.3d 465, 471 (Pa. Super. 2022).

In *Fitzgerald*, we applied *Davis* and concluded the trial court incorrectly ruled that evidence related to (1) the domestic assault victim's (Victim) 911 call; and (2) Victim's statements to a paramedic shortly after the assault, was testimonial and thus inadmissible under *Crawford* and the Confrontation Clause. *See id.* at 471-74. With respect to evidence of the 911 call, we emphasized that (1) Victim placed the call shortly after the accused (Fitzgerald) physically assaulted Victim inside her residence; (2) Victim remained nearby the scene after placing the call; (3) when police responded,

- 18 -

Fitzgerald was located inside Victim's residence, destroying her property; and

(4) police had not secured the scene. *Id.* at 472.

The *Fitzgerald* Court stated,

[w]hile Victim had fled [Fitzgerald's] physical assault prior to initiating the 911 call, an ongoing emergency remained as Victim remained close by, [Fitzgerald] continued to destroy her residence, and law enforcement had not secured the scene. Furthermore, as in *Davis*, follow up questions by the [911] operator focused on helping police assess the threat to their own safety and possible danger to Victim as they formulated a responsive plan to the emergency.

*Id.* We also concluded Victim's statements to the paramedic were non-

testimonial, stating that Victim's

conversation with the paramedic also occurred shortly after the crime had been committed and was tailored to discerning the extent of Victim's injuries so that the appropriate treatment could be provided.

*Id.* at 473.

The instant case and *Fitzgerald* are closely analogous, and we reach

the same result. No Confrontation Clause violation occurred. *See id.* at 471-

74; *Davis*, 547 U.S. at 827. *Accord Commonwealth v. Williams*, 103 A.3d

354, 362-63 (Pa. Super. 2014) (holding as non-testimonial statements of the

victim of domestic abuse to 911 operator (and later, a paramedic), describing

the defendant's (1) sexual assault of the victim; (2) igniting a fire in the

victim's residence, and on her person, before fleeing; and (3) infliction of the

victim's injuries (including burn wounds that led to her death)).

Accordingly, as we conclude the trial court did not err or abuse its discretion in its evidentiary rulings, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

P. J. Lazarus concurs in the result.

Judge Nichols concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  9/04/2024